ENOCH B. HATHAWAY & others vs. SAMUEL CROCKER & others.

A promissory note was made by a firm, payable to A., D. and C., and a corporation, joint owners of a vessel: The promisees assigned the note to A. towards his share of the earnings of the vessel: The corporation assigned all its property, under the insolvent law, for the benefit of all its creditors, one of which creditors was a bank: A suit against said firm was brought on said note, in the name of all the promisees, for the benefit of A. *Held*, that a stockholder in the bank, which was a creditor of said corporation, was a competent witness for the plaintiffs.

Where the question in issue is, whether A. is member of a certain firm, and a witness testifies that A. is not a member, the witness may be asked, on cross-examination, if he has not told B. that A. was a member.

Where A., B. and C. are sued on a joint contract, and a general verdict is returned for A., on his pleading the general issue, and giving in evidence a discharge under the insolvent law; and B. is defaulted, and a verdict is returned against C.; the plaintiff is entitled to a judgment against B. and C.

THE plaintiffs in this suit were Enoch B. Hathaway, Charles and Increase Robinson, and the Taunton Iron Company, former joint owners of a sloop. The action was assumpsit on a note signed by Charles Richmond, jr. as agent for the Taunton Iron Foundry, and given to the plaintiffs in payment of freight earned by said sloop in transporting goods for said Foundry. There was also an indebitatus count for freight due to the plaintiffs for carriage of goods on board said sloop. The defendants were Samuel Crocker, Charles Richmond, sen. and Charles Richmond, jr., who were alleged to be partners under the name and firm of the Taunton Iron Foundry. Samuel Crocker pleaded the general issue, with a statement, by way of defence, of his discharge under the insolvent law of 1836, c. 238. Charles Richmond, sen. was defaulted. At the trial, in the court of common pleas, the jury, under the direction of the court, and without objection from any party, returned a general verdict for said Crocker, at his request.

The plaintiffs, to prove that Charles Richmond, jr. was a partner in the firm known by the style of the Taunton Iron Foundry, introduced Stephen Rhoades as a witness, in the course of whose testimony it appeared that he was owner of shares in the Taunton Bank; that said bank was one of the many creditors of the Taunton Iron Company, one of the plaintiffs in this action and a corporate body; and that said company had failed and made a general assignment of its property, for the benefit of all its

creditors. The defendants thereupon objected to the competency of said Rhoades as a witness, on the ground of interest. The plaintiffs then stated that this action was prosecuted for the sole benefit of Enoch B. Hathaway, one of the plaintiffs, to whom the whole cause of action was assigned by the other plaintiffs long before the action was commenced, said Hathaway having taken the note in suit as his share, or part of his share, of the earnings of the sloop aforesaid. Much evidence was offered to prove this assignment, and among other proofs thereof, certain books kept by the clerk of the Taunton Iron Foundry were submitted to an examination by the court. Upon the whole evidence on this point, the court, being of opinion that said assignment had been duly and legally made before this action was brought, and that said Rhoades had no interest in the action, admitted his testimony.

Samuel Crocker was called as a witness by the plaintiffs, and testified. Charles Richmond, sen. was called as a witness, by the defendant Charles Richmond, jr., without objection, and testified that said Richmond, jr. was not a partner. In the course of the cross-examination, he was asked by the plaintiffs' counsel, if he had not told Oakes Ames that Charles Richmond, jr. was a partner in the Taunton Iron Foundry. The defendants' counsel objected to this question, as incompetent to prove that said Richmond, jr. was a partner. The plaintiffs' counsel then stated, that the question was asked for the purpose of contradicting the witness; and for that purpose the court permitted it to be asked : The witness replied that he had no recollection of it, but he thought it very likely he had so stated to said Ames ; and gave his reasons therefor. He added, that C. Richmond, jr. never was a partner. Afterwards, the plaintiffs called said Ames, and inquired of him what, if any thing, C. Richmond, sen. had told him respecting C. Richmond, jr. being a partner in the Taunton Iron Foundry. The defendant objected to this question, on the ground that Ames, the witness, could be thus interrogated only for the purpose of contradicting C. Richmond, sen. ; and as said Richmond had expressly admitted that such communication had been made to Ames, an answer, stating that he had

informed Ames that Richmond, jr. was a partner, would not contradict him. But the court permitted the question to be put, and Ames answered, that said Richmond, sen. had informed him that Richmond, jr. was a partner ; and he proceeded to state the conversation between said Richmond, sen. and himself, as to the relation which said Richmond, jr. bore to said firm.

The defendant contended that the general verdict in favor of Crocker, viz. that he never promised, was a bar to the plaintiffs' recovery ; but the court ruled otherwise, and a verdict was returned against said Richmond, jr., who alleged exceptions to the aforesaid rulings of the court.

*Coffin,* for C. Richmond, jr.

*E. P. Hathaway,* for the plaintiffs.

SHAW, C. J. 1. The first exception was to the competency of Stephen Rhoades, as a witness, on the ground of interest. But we are satisfied, on the facts stated in the bill of exceptions, that Rhoades had no interest, through the Taunton Bank or otherwise, in the event of this suit ; that the Taunton Bank could not be charged with costs should the plaintiffs fail in their action ; and therefore, as a stockholder in that bank, he can neither gain nor lose by the event of this suit.

2. The next exception was to the admission of Oakes Ames, to contradict a statement made by Charles Richmond, sen., a witness called by the defendant. Said Richmond testified that Charles Richmond, jr. was not a partner. He was asked, on cross-examination, whether he had not, on a former occasion, told Oakes Ames that said Richmond, jr. was a partner in the Iron Foundry. To this question Richmond, jr. objected, as incompetent to prove him to be a partner. It was then stated by the plaintiffs' counsel, that the question was asked for the purpose of contradicting the witness. For that purpose it was permitted to be asked, and the witness replied that he had no recollection of it, but thought it very likely he had so stated to Ames, and gave his reasons therefor ; and added that said Richmond, jr. never was a partner.

Now we are of opinion that the question was a proper one, for reasons wholly independent of the one assigned by the plain

tiffs' counsel; namely, that of a purpose to produce testimony to contradict him. The question, whether Richmond, jr. was a partner, was not only a question within the issue; it was the very question in issue. It was proper, therefore, to ask the witness if he had not stated otherwise at some former time; because, if he had, it tended to diminish the credit due to his present testimony, by showing a want of integrity and veracity, or a defect of memory. This question was proper in itself, whether the party expected to call evidence to contradict him or not.

But the objection most relied on, we believe, will appear from the next clause in the bill of exceptions, which is thus stated : " Afterwards, the plaintiff called said Oakes Ames, and inquired of him what, if any thing, C. Richmond, sen. had told him respecting C. Richmond, jr. being a partner in the Taunton Iron Foundry. The defendant objected to this question, on the ground that Richmond, the witness, had expressly admitted the fact, and therefore that the testimony would not contradict him." But the objection was overruled, the testimony admitted, and the conversation alluded to was given in evidence. And this is the ground of the exception.

From the manner in which the point is stated, we were at first a little misled as to the real question ; but on more consideration, we are of opinion that the decision was right in receiving Ames's testimony. It is a well settled rule of evidence, that when a witness testifies to a material fact, within the issue, the adverse party may give evidence that the witness has, at some other time, or at various times, made a different statement of the fact. It tends to show that his present testimony is erroneous or false, as to such material fact. And such contra dictory statement may be proved by the witness himself, on cross-examination, or by other witnesses, or by both. The fact that he has formerly stated what he now denies, or the reverse, becomes itself a fact which may be proved by any competent evidence. The difference between the cases where other evidence may be called to contradict a witness, and where it cannot, is this : If the fact to which the contradiction applies is a material fact, within the issue, he may be contradicted by any

evidence of other statement; but when it is not material, and not within the issue, contradicting evidence cannot be introduced. For, in cross-examination, an adverse party is usually allowed great latitude of inquiry, limited only by the sound discretion of the court, with a view to test the memory, the purity of principle, the skill, accuracy, and judgment of the witness; the consistency of his answers with each other, and with his present testimony; his life and habits, his feelings towards the parties respectively, and the like; to enable the jury to judge of the degree of confidence they may safely place in his testimony The rule is, that when the question is of this description, relative to a fact collateral to the issue, and not material to it, the answer of the witness must be taken as it is, and other evidence cannot be offered to contradict him. And the reason of this rule is obvious: The cross-examination, to the extent mentioned, is allowed only for the purpose of exhibiting the witness in his true light to the jury; and when that is done, the whole purpose of cross-examination to matters out of the issue is accomplished. Besides; if a different rule were adopted, if the rule stated were not strictly adhered to, the trial of a cause would branch out into collateral issues without limit. A witness, therefore, cannot be called to contradict what another witness has thus testified on cross-examination relative to a fact not material to the issue. 1 Stark. Ev. 134, 145.

Tried by these rules, we think the question was proper. The fact to which the witness, Richmond, sen. had testified, whether Richmond, jr. was a partner, was the fact in issue. The plaintiff was then at liberty to contradict it — that is, to prove that the witness had made a different statement — by any competent evidence; by the witness himself on cross-examination, or other witnesses. Had the fact been one not material to the issue, which had been stated by the witness on cross-examination, and to which he had been interrogated with a view to such contradiction, the objection would have been well founded. *Commonwealth* v. *Buzzell,* 16 Pick. 154. *Tucker* v. *Welsh,* 17 Mass. 160. *Commonwealth* v. *Sacket,* 22 Pick. 394. *Brockett* v *Bartholomew,* 6 Met. 399. Greenl. on Ev. §§ 446 – 449

Nor is it any objection to this question to Ames, that the witness admitted, on his cross-examination, that he had made a statement to Ames different from his testimony now given. The fact is, he did not admit it, but said he did not recollect it But he went on to add, that he might have so stated, and gave some reasons for it, which are not stated. Even if he had admitted the particular fact to Ames, he may have admitted it with such qualifications and excuses as to weaken the force and effect of the conflicting statement. But the true reason is the one already alluded to ; that this was not merely to contradict what Richmond had testified on cross-examination, and because he had so testified ; but to contradict what he had stated in his direct examination on the material fact in issue ; and this the plaintiffs might do, by any competent evidence, and without having first put the question to the witness himself.

3. One other point was taken at the trial. It was objected, that as this was a declaration on a joint contract, and as a verdict had been taken in favor of Crocker, one of the defendants, no judgment could be taken against the other two defendants, and that they were entitled to a judgment *non obstante veredicto*

Formerly, the rule undoubtedly was, that in assumpsit on a joint promise, if there was a verdict, on the general issue, in favor of one, it falsified the averment of a joint promise, and no judgment could be had against the others, though defaulted *Tuttle* v. *Cooper*, 10 Pick. 281. But that rule was always adopted with this exception ; that when one defendant pleaded in his discharge some matter personal to himself, as a discharge under a bankrupt act or insolvent law, and upon such plea had a verdict, the other defendants were still liable. (See the cases cited and commented on, at length, in the above case, *Tuttle* v. *Cooper.*) The reason of the distinction is obvious, and it is this ; that such a special personal defence does not falsify the averment of an original joint promise, but, admitting it, avoids it by the averment of matter subsequent. And now, by the law, *St.* 1836, *c.* 273, discontinuing the use of special pleading, the general issue, with notice of the special matter of avoidance, must have the same effect.

But we are inclined to the opinion, that there is another good answer to the objection. By the rule of the common law, in an action against two or more on a joint contract, if the joint contract is not proved against all, the plaintiff must become nonsuit or discontinue, and fail in his action, although the proof was sufficient to maintain his action against the other defendant or defendants. This was probably regarded as a hardship, and often was so, in the case most likely to occur, where, in a suit against a partnership, some are sued as dormant partners, the proof fails as to some of them, but establishes an unquestionable right of action against the ostensible partners, and those who are proved to be dormant partners. The technical rule therefore often worked injustice. Soon after the publication of *Tuttle* v. *Cooper*, which was published in 1833, the legislature passed an act which provided, that in such case the defendant not liable should be discharged with his costs, and that the plaintiff might proceed against the other defendant or defendants. *St.* 1834, c. 189. The same principle, with some slight modifications in regard to its practical application, was adopted and confirmed by the Rev. Sts. c. 100, § 7. And it seems to us, that within the provisions of this statute, the plaintiffs might discontinue against Crocker, and amend their declaration conformably to the truth of the case, if it has not already been done, so as to take judgment against the other two defendants.

*Exceptions overruled.*